UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:15-CV-00066-TBR

ROBERT JACKSON,                                                                                  PLAINTIFF

v.

LUIS PALMER, *et al.*,                                                                          DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court on Defendants Luis Palmer, Jeffrey Ayres, and Nick Rice's motion for summary judgment. [DN 42.] Plaintiff Robert Jackson responded by filing his own brief captioned as a motion for summary judgment, [DN 43.] Defendants responded to that motion, [DN 44.] Fully briefed, these matters are now ripe for decision. For the reasons discussed herein, Defendants' motion for summary judgment is **GRANTED** and Plaintiff's motion for summary judgment is **DENIED**. The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

BACKGROUND

This case arises out of a traffic stop of the car in which Plaintiff Robert Jackson was a passenger and the subsequent searches Defendant Jeffrey Ayres, a Kentucky State Trooper, performed of Jackson's person as a result. [DN 1.][1] According to Jackson's complaint, he was a passenger in a vehicle that Defendant Ayers pulled over on March 23, 2014. [*Id.* at 2.] Jackson alleges that Defendant Ayers "removed plaintiff from the motor vehicle" and, "[w]ithout probable cause or justification, and in violation of plaintiff's constitutional rights . . . ordered

---

[1] As the Court explains in greater detail below, Jackson's initial case, 5:15-CV-67, was administratively dismissed when his case was consolidated with two other Plaintiffs who were in the same car. Both cases were consolidated into the instant case, 5:15-CV-66. However, Jackson's complaint, DN 1 in 5:15-cv-67, was only filed in the former case, 5:15-CV-67. Accordingly, when the Court refers to refers to Jackson's complaint and cites to "DN 1" throughout this opinion, the Court is referring to DN 1 in 5:16-CV-67.

1

plaintiff to pull down his pants and underclothing and examined his anus in public on the side of the Edward T. Breathitt Pennyrile Parkway . . . in the full view of passing motorists." [*Id.*] In doing so, Jackson claims that Ayers "forcibly grabbed plaintiff's arm and ordered him to bend over." [*Id.* at 3.] According to Jackson, "[a]t no point during the aforementioned events had [D]efendant Ayers or other law enforcement obtained a search warrant nor had plaintiff been placed under arrest." [*Id.*]

After the traffic stop and search, however, Jackson was arrested. [DN 42-3 (Commonwealth of Kentucky Uniform Citation).] The Uniform Citation form that Ayers filled out for Jackson recites the following version of events:

> During traffic stop above was front right passenger. K9 indicated a positive presence of narcotics. While searching above above pulled away from myself and would not put his hands behind his back. Above was drive stunned with tazer [sic]. Approximately 7 grams of possible heroin were located in crease of above's buttocks along with small amount of marijuana. While above was resisting he was trying to reach toward his buttocks. Substance field tested positive for heroin. digital scales indicated suspected heroin in bag weighed 7 grams.

[*Id.*] Jackson was charged with four crimes: 1) tampering with physical evidence, 2) resisting arrest, 3) trafficking in controlled substances, 1st degree, an amount greater to or equal to 2 grams of heroin, and 4) possession of marijuana. [*Id.*] Jackson pled guilty to all four charges, however, he entered only a conditional plea of guilty as to his trafficking in controlled substances charge pending his appeal of the circuit court's denial of his motion to suppress. [DN 42-1 at 5 (citing DN 42-4).]

Jackson moved to suppress the evidence of heroin trafficking found during the search of his body during the roadside stop in Christian County Circuit Court. [DN 42-5 (Jackson's Motion to Suppress).] The trial court denied Jackson's motion, [DN 42-6 at 1–2 (Christian County Circuit Court Decision)], and the Kentucky Court of Appeals affirmed. [DN 42-7

(Kentucky Court of Appeals Decision).] The Supreme Court of Kentucky denied discretionary review. [DN 42-8 (Kentucky Supreme Court Order).] Those state court decisions will be discussed in more detail below.

Now, Jackson brings the instant lawsuit against Ayers in federal court alleging violations of his constitutional rights under 42 U.S.C. § 1983 resulting from alleged illegal searches and seizures during the traffic stop. [*Id.* at 1–3.] He also brings a pendent state law claim for "a harmful and offensive touching [by Ayers] of plaintiff's person." [*Id.* at 3.] Jackson alleges that, as a result of the foregoing events, he has "suffered extreme embarrassment, humiliation, and degradation," "and physical pain and suffering." [*Id.*] Jackson seeks both compensatory and punitive damages. [*Id.* at 3–4.]

Jackson initially brought his case separately from his two (now former) co-Plaintiffs. Jackson's complaint was initially filed in Civil Action No. 5:15-CV-67. Separately, under the instant case number, Civil Action No. 5:15-CV-66, the two other occupants of the car in which Jackson was a passenger, Darryl Dobson and Marion Robinson, brought suit against Defendants Ayers, Palmer, and Rice asserting a 42 U.S.C. § 1983 claim for violations of their rights under "the Fourth, Fifth and Fourteenth Amendments to the United States Constitution." [DN 4 (Dobson and Robinson's Amended Complaint).] Due to the similarity of the Plaintiffs' claims and that fact that those claims all arose from the same traffic stop incident, this Court consolidated Jackson's action with Dobson and Robinson's action into the instant case, 5:15-CV-66. [DN 21 (Order Granting Motion to Consolidate).] The case number under which Jackson initially filed his complaint, 5:15-CV-67, was administratively dismissed. [*Id.*] However, Dobson and Robinson were ultimately dismissed from this action due to a failure to appear in the case.

[DN 38 (Order Dismissing/Terminating Dobson and Robinson).] Therefore, Jackson is the only remaining Plaintiff in this action.

DISCUSSION

In the instant motion, Ayers, Palmer, and Rice move to dismiss both Jackson's federal constitutional claim and his pendent state law claim. [DN 42.]

**1. Defendants Palmer and Rice**

First, Defendants argue that both Palmer and Rice must be dismissed entirely from this suit because Jackson never asserted any claims against them. [DN 42-1 at 3.] Indeed, Dobson and Robinson, who are now dismissed from this action, were the only Plaintiffs who asserted claims against Defendants Palmer and Rice. [*See* DN 4 (Dobson and Robinson's Amended Complaint).] Jackson, however, only brought his claims against Defendant Ayers. [*See* DN 1.] Specifically, Jackson styled his action only against one Defendant, Jeffrey Ayers, and only ever refers to a single "defendant" throughout his complaint. [*Id.*] Accordingly, because Jackson never asserted any claims against Palmer and Rice in his complaint, those Defendants will be dismissed from this suit in their entirety.

**2. Defendant Ayers**

Next, Ayers moves for summary judgment on the federal and state law claims asserted against him. The Court will address each of these claims in turn.

**a. Claims for Violations of the U.S. Constitution Under 42 U.S.C. § 1983**

Jackson first alleges that Ayers' actions violated his civil rights by removing him from the vehicle and searching him unlawfully, "[w]ithout probable cause or justification." [DN 1 at 1–2.] In his motion for summary judgment, Ayers contends that this claim is barred both by the *Heck* doctrine and the doctrine of collateral estoppel.

### i. The *Heck* Doctrine

In *Heck v. Humphrey*, "the Supreme Court held that a plaintiff could not bring a § 1983 action if a favorable judgment 'would necessarily imply the invalidity of his conviction or sentence; if [so], the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated' by executive order, reversal on direct appeal, or writ of habeas corpus." *Harper v. Jackson*, 293 F. App'x 389, 391 (6th Cir. 2008) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)). "Specifically, we ask whether success in a § 1983 suit would 'negate an element of the offense.'" *Id.* (quoting *Heck*, 512 U.S. at 486 n. 6).

The *Heck* doctrine applies with some limitations in the Fourth Amendment context, however. "By way of a now well-known footnote, the *Heck* Court observed that even if successful, some Fourth Amendment claims brought under § 1983 'would not *necessarily* imply that the plaintiff's conviction was unlawful' due to doctrines like independent source, inevitable discovery, and harmless error." *Id.* (quoting *Heck*, 512 U.S. at 487 n. 7). In 2007, the Supreme Court stated that "a Fourth Amendment claim *can* necessarily imply the invalidity of a conviction, and ... if it does it must, under *Heck*, be dismissed." *Wallace v. Kato*, 549 U.S. 384, 395 n. 5 (2007) (emphasis added). The Sixth Circuit "comports with that position, placing the onus on the district court to assess on a case-by-case basis whether a favorable Fourth Amendment judgment would impugn the validity of an outstanding conviction." *Harper*, 293 F. App'x at 391–92. In essence, "*Heck* bars § 1983 Fourth Amendment claims where the contested search produced the *only* evidence supporting the conviction and no legal doctrine could save the evidence from exclusion." *Id.* at 392. However, in situations in which a conviction would not necessarily be impugned even if the defendants succeeds on his § 1983 Fourth Amendment claims, *Heck* does not bar the defendant's suit. *Id.*

5

Here, Ayers argues that "[i]t is beyond dispute that if the search and seizure was held to be unconstitutional, [Jackson's] conviction would be overturned as all of the evidence from his criminal case would have been suppressed." [DN 42-1 at 4.] Jackson did not respond to this argument in his response, [*see* DN 43]; however, in his motion to suppress in Christian County Circuit Court, Jackson argued that "any and all evidence resulting from the March 23, 2014 strip search of [his person] should be suppressed." [DN 42-5 at 8.] This would include the heroin and the marijuana, both of which were obtained from his buttocks. Taking these arguments as true, *Heck* would indeed bar Jackson's § 1983 claims. However, if Jackson's convictions would not necessarily be impugned due, for example, to the inevitable discovery doctrine, then *Heck* would not bar his claim. Ultimately, however, the Court need not make a final determination as to whether *Heck* bars Jackson's § 1983 claim. Rather, because the doctrine of collateral estoppel bars his claim regardless of *Heck*, the Court will base its decision on those grounds.

  ii.  **Collateral Estoppel**

Ayers argues that, even if *Heck* does not bar Jackson's federal claim, the doctrine of collateral estoppel bars Jackson's unlawful search and seizure claim because that claim has already been litigated in Kentucky state courts. The Sixth Circuit has indeed recognized that "[w]here, as here, an issue was considered in a prior criminal proceeding, a plaintiff may be estopped from relitigating that issue in a subsequent civil action." *B.R. v. McGivern*, No. 16-4208, 2017 WL 4978681, at *6 (6th Cir. Nov. 1, 2017) (citing *Hinchman v. Moore*, 312 F.3d 198, 202 (6th Cir. 2002)). "This is because 'a state-court judgment is given the same preclusive effect that it would have under the law of the state in which the judgment was rendered.'" *Id.* (citing *Hinchman*, 312 F.3d at 202 (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).

Here, the Christian County Circuit Court denied Jackson's motion to suppress, [DN 42-6], the Kentucky Court of Appeals affirmed, [DN 42-7], and the Kentucky Supreme Court denied discretionary review. [DN 42-8.] In the Kentucky Court of Appeals decision affirming the Christian County Circuit Court's denial of Jackson's motion to suppress, the court explained that,

> [p]rior to stopping the vehicle, Trooper Ayers had received a text message from Trooper Sean Wint with information from an informant. Trooper Ayers testified at the suppression hearing that he received text messages with a description of the vehicle, the vehicle license number, a picture of the rear of the vehicle and a time window for when the vehicle would be traveling. The tip stated that Jackson and other occupants of the vehicle were returning from Chicago after obtaining narcotics there. Trooper Ayers also indicated that Jackson was specifically identified as one of the occupants of the vehicle, along with two other male subjects.
>
> * * *
>
> During Deputy Green's search of the trunk, he made the comment that Jackson might have narcotics between his buttocks, because another trooper, Trooper Palmer, stated that Jackson acted very nervous when Deputy Green brought the K9 by him. Jackson remained with Trooper Palmer at the front right tire of Trooper Ayers' police cruiser while they were searching the vehicle.
>
> After searching the vehicle, Trooper Ayers told Jackson that the dog had made a positive indication of narcotics in the vehicle and that they needed to search his person. Trooper Ayers searched Jackson's upper body, his shoes, pockets, and the areas associated with his pockets.
>
> Trooper Ayers asked Jackson to lower his pants, which were already halfway down his buttocks, and Jackson complied. Trooper Ayers asked Jackson to pull out the front of his boxers. Jackson complied and pulled his genitals to the side.
>
> Trooper Ayers then walked around to Jackson's back and asked him to lower his boxers. At this point, Jackson was still standing at the right front tire of Trooper Ayers' vehicle, leaning over the hood toward the roadway. Jackson complied and lowered his boxers to the bottom of his buttocks. As Jackson lowered his boxers, Trooper Ayers observed Jackson place his hand underneath his buttocks like he was trying to catch something. Trooper Ayers did not know what Jackson was reaching for and asked him to bend over.

At this point, Jackson clinched up, and Trooper Ayers pushed Jackson against the hood of the car. Jackson would not place his hands behind his back. Deputy Green observed that Jackson had begun resisting and trying to pull away from Trooper Ayers. Deputy Green took Trooper Ayers' taser and told Jackson he was going to dry stun him. Deputy Green told Jackson to stop resisting, but Jackson said no. At this point Jackson was tasered.

When Trooper Ayers got Jackson on the ground, he saw the end of a sandwich bag sticking out from between Jackson's buttocks. Trooper Ayers put on gloves and recovered the package. Jackson was lying face down on the ground at the right front tire of the police vehicle when Trooper Ayers recovered the baggie. Trooper Ayers' cruiser was between the roadway and Jackson, and Trooper Ayers testified that Jackson could not be seen from the roadway when he was lying down. The bag that Trooper Ayers recovered contained a small amount of marijuana and six or seven grams of heroin.

*Jackson v. Commonwealth*, No. 2015-CA-000411-MR, 2016 WL 833993, at *1–2 (Ky. Ct. App. Mar. 4, 2016), *review denied* (Dec. 8, 2016), *opinion not to be published*.

According to the Court of Appeals,

In this case, the officers initially had a reasonable suspicion that criminal activity was afoot. Based on the tip from the confidential informant, the officers observed the suspected vehicle speeding on the roadway it was reported to be traveling. Further, the occupants inside matched the descriptions given by the informant, and Jackson was acting strangely and answering for the driver, Robinson. The officers smelled marijuana and saw rolling papers in the front seat. They also found residue which was suspected to be from drugs in the trunk. Finally, the K9 alerted to the portion of the car in which Jackson was located, and Jackson behaved strangely when the K9 was close to him. This, in addition to the strange way Jackson behaved when the officers were performing the *Terry* frisk, gave the officers probable cause to search Jackson. We find no error in the trial court's conclusion that the search was warranted under the circumstances.

*Id.* at *4. The Court of Appeals also found that

the scope of the particular intrusion was not overly broad. Jackson's pants were in fact pulled partially down, and he appeared to consent to this by pulling his genitals aside and lowering his pants. However, when he began to act as if he were going to catch something underneath his buttocks, he was searched further, based on the probable cause the officers had from the K9 alerting and the drug evidence already found in the vehicle. Jackson was not fully naked, and the scope of the search was limited to the location where the officers suspected Jackson had drugs hidden based upon his behaviors.

> The manner in which the search was conducted was also reasonable, given the above circumstances and the testimony of the officers. Jackson has not made any argument on appeal to this Court that the testimony of the officers was invalid or not supported by the record. His only arguments have been that the trial court improperly found that the search was warranted and was reasonable. In this case, the search amounted to the lowering of Jackson's boxers, which was done by Jackson himself. The search was a visible search, and Trooper Ayers did not manipulate any part of Jackson's anatomy to conduct the search. There was very minimal, if any, pain or trauma to Jackson's body. The search consisted of the officers visibly observing the baggie sticking out from between Jackson's buttocks. We conclude that the manner of the search was also reasonable.
>
> As stated above, the officers had several reasons for searching Jackson's buttocks for drugs. As his pants were already partially down and he was behaving strangely, the officers were justified in initiating the search based on the K9 alert and the drug residue found in the car.
>
> * * *
>
> The record indicates that Jackson was not visible from the roadway, as he was on the ground and a vehicle was blocking him from the sight of passersby. Jackson does not allege that he was visible to patrons on the highway, but instead states that he might have been observed by the two other occupants of the vehicle. Further, Jackson argues that the strip search could have been conducted privately at a detention center after the arrest.
>
> We conclude that because Jackson was searched out of vision of the public and was not able to be seen from the roadway, the place where the search was conducted was not unreasonable under the circumstances. The search took a couple of minutes, and Jackson already had his pants down partway and consented to pulling them down himself. Furthermore, had the search been performed at a detention facility, the contraband would ultimately have been found minutes later. We cannot say that the place of the search was unreasonable.
>
> Because the search of Jackson was supported by probable cause and was reasonable, we affirm the Christian Circuit Court's February 13, 2015, order denying Jackson's motion to suppress contraband found during his arrest.

*Id.* at *5–6.

Under Kentucky law, "[d]efensive collateral estoppel . . . refers to *a defendant's use of a prior adjudication* to prevent a plaintiff from asserting a claim the plaintiff already unsuccessfully litigated against another defendant in a prior adjudication." *In re Kennedy*, 243

B.R. 1, 9 (Bankr. W.D. Ky. 1997), *aff'd*, 249 F.3d 576 (6th Cir. 2001) (emphasis added) (citing *City of Covington v. Bd. of Trustees of Policemen's & Firefighters' Ret. Fund of City of Covington*, 903 S.W.2d 517, 521 (Ky. 1995), *as amended* (May 30, 1995), *as modified on denial of reh'g* (Ky. 1995). Here, Ayers, the Defendant, seeks to prevent Jackson from reasserting his Fourth Amendment search and seizure claim in this Court on the grounds that Jackson already unsuccessfully litigated that claim in Kentucky state courts.

> The Kentucky Supreme Court has identified five elements that must be met before a party may assert defensive collateral estoppel: (1) at least one party to be bound in the second case must have been a party in the first case; (2) the issue in the second case must be the same as the issue in the first case; (3) the issue must have been actually litigated; (4) the issue was actually decided in that action; and (5) the decision on the issue in the prior action must have been necessary to the court's judgment and adverse to the party to be bound.

*GATX Corp. v. Addington*, 879 F. Supp. 2d 633, 660 (E.D. Ky. 2012) (citing *Miller v. Admin. Office of Courts*, 361 S.W.3d 867, 872 (Ky. 2011)). As evidenced by the above excerpt from the Kentucky Court of Appeals' opinion, each of these elements is satisfied here. Jackson was a party to his prior criminal case in Christian County Circuit Court, he raised the same Fourth Amendment claim relating to the traffic stop and strip search in that case as he raises here, the issue was actually litigated and decided by the Christian County court and the Kentucky Court of Appeals, it was necessary to those courts' decisions on his motion to suppress and subsequent judgment of conviction, and it was adverse to Jackson, the party to be bound here. *See id.*

The United States Supreme Court has also noted with approval that numerous Courts of Appeals have "held that collateral estoppel applies when § 1983 plaintiffs attempt to relitigate in federal court issues decided against them in state criminal proceedings." *Allen v. McCurry*, 449 U.S. 90, 102 (1980). The *Allen* Court further explained that "nothing in the language or legislative history of § 1983 proves any congressional intent to deny binding effect to a state-court judgment or decision when the state court, acting within its proper jurisdiction, has given

the parties a full and fair opportunity to litigate federal claims, and thereby has shown itself willing and able to protect federal rights." *Id.* at 103–04. Applying those principles here, the Court finds that the Christian County Circuit Court and the Kentucky Court of Appeals decisions denying Jackson relief as to the same Fourth Amendment claims he raises in this Court preclude him from relitigating those claims here.[2] Therefore, Ayers' motion for summary judgment on Jackson's § 1983 Fourth Amendment claim is granted.

### b. State Law Claim for Offensive Touching

Finally, Ayers moves for summary judgment on Jackson's state law claim for Ayers alleged "harmful and offensive touching of plaintiff's person." [DN 1 at 3; DN 42 at 7–8.] In his complaint, Jackson contends that "[a]fter ordering plaintiff to pull down his pants and undergarments and plaintiff having complied, defendant Ayers forcibly grabbed plaintiff's arm and ordered him to bend over." [DN 1 at 3.] However, having dismissed Jackson's federal law claim, the Court declines to exercise supplemental jurisdiction over Jackson's remaining state law claim. *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim" in situations when "the district court has dismissed all claims over which it has original jurisdiction."). Accordingly, Jackson's state law claim for the alleged "assault committed against his person," [DN 1 at 3], is dismissed.

CONCLUSION

For the reasons discussed herein, Defendants' motion for summary judgment, [DN 42], is **GRANTED**, and Plaintiff's motion for summary judgment, [DN 43], is **DENIED**. Plaintiff's §

---

[2] In response to Defendants Ayers, Palmer, and Rice's motion for summary judgment, [DN 42], Jackson filed his own brief captioned as a "motion for summary judgment." [DN 43.] However, therein, Jackson does not actually argue for summary judgment. Rather, he recites the factual background of the traffic stop and strip search, requests that "the video from the cruisers dashboard camera [be] introduced into evidence as proof of the humiliation that Mr. Jackson had to suffer," and requests a trial. [DN 43 at 6.] However, because the Court finds that Jackson's claims are subject to dismissal, Jackson's motion, to the extent it is one, will be denied.

1983 claim is **DISMISSED WITH PREJUDICE**, while his state law assault claim is **DISMISSED WITHOUT PREJUDICE**. The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

Date:

cc: Counsel